IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CHRISTY WILLIS

          PLAINTIFF

v.          CIVIL ACTION NO. 1:19-CV-00036-GHD-DAS

SEMINOLE FURNITURE, LLC,
ALAN WHITE FURNITURE MFG., INC., and
RICKY STROUPE          DEFENDANTS

### OPINION GRANTING DEFENDANT RICKY STROUPE'S MOTION FOR SUMMARY JUDGEMENT

Presently before the Court is Defendant Ricky Stroupe's Motion for Summary Judgment [82], in the face of allegations against him of racial discrimination and retaliation in employment and malicious interference with employment, as presented by the Plaintiff in her First Amended Complaint [25]. Upon due consideration, for the reasons set forth herein, the Court hereby grants the Defendant's motion.

### I. Factual Background and Procedural History

The Plaintiff is a resident of Hamilton, Mississippi [25, at ¶ 1]. Defendant Seminole Furniture, LLC ("Seminole") is a Mississippi limited liability company [25, at ¶ 2]. Defendant Alan White Furniture Mfg., Inc. ("Alan White") is a Mississippi corporation [*Id.*]. Defendant Ricky Stroupe was one of three co-owners of Seminole, along with Michael Hyde and Mark Dauler [9, at ¶ 1]. Specifically, Stroupe owned 55% of Seminole, which he eventually turned over to Mr. Dauler for $100,000 [82-4, at p. 7, ln. 9 to p. 8, ln. 1]. Stroupe served as the president of Seminole [82-4, at 12, 21–25].

The Plaintiff has stated that she worked for Seminole for approximately 9 months, and that she was never offered a promotion prior to the central events of this incident, even though

1

she was promised a raise after 90 days on the job [25, at ¶ 4]. The Plaintiff worked as a "bundle girl" or "bundler," which required her to pick up the work produced by the sewers, bind the work into bundles, and put the bundles into crates [87, at 2]. As a bundler, the Plaintiff was paid $9.00 an hour [*Id.*]. According to the Plaintiff's direct supervisor at Seminole, Barbara Garcia, the Plaintiff did a good job as a bundler [86-4, p. 32, 3–10]. Garcia did not want to promote the Plaintiff to the sewer position because she needed bundlers [*Id.*].

On February 27, 2018, the Plaintiff sent a text message to Garcia in which she asked Garcia why she could not have the promotion from bundler to sewer [87, at 3; 25-1]. Within a few minutes, the Plaintiff received a response sent from Garcia's phone that read: "Because I already got to [sic] many niggers on my sewing machine" [*Id.*]. That same day, the Plaintiff told her mother Chrissy Willis, who also worked at Seminole as a sewer, about the text message [87, at 3]. Also that day, the Plaintiff's mother told Garcia about the message, and asked the Plaintiff to show the message to Garcia [*Id.*, at 4]. Garcia denied sending the text message [86-4, at 5, p. 14, lns. 10–11]. Garcia was accused of using a racist term in a previous job as well [86-4, at 5, p. 16, lns. 1-25].

On the day of the incident, the Plaintiff showed the text message to Seminole plant manager Lynn Montgomery, who allegedly told the Plaintiff that he would "handle it" [87, at 4]. The Plaintiff alleges that she spoke with an attorney about this racist comment, and that shortly thereafter, she was promoted to sewer under a 10-day probationary period agreement [25, at ¶ 6]. She was promoted on March 10, 2018 [87, at 5]. Garcia stated that the Plaintiff's mother told her that the Plaintiff had contacted an attorney about the text message [86-4, at p. 31, lns. 1–9]. Garcia also stated that she promoted the Plaintiff because the Plaintiff and her mother "would not stop hindering [her] about it" [Id., at p. 31, lns. 10–15]. The Plaintiff only worked in her new

position for three days before being terminated by Garcia on March 14, 2018 [25, at ¶ 7]. Garcia stated that no one else was involved in the decision to terminate the Plaintiff [86-4, p. 32, lns. 16-25]. Garcia's stated reason for termination was poor performance [*Id.*, at p. 32, ln. 25 to p. 33, lns. 16], but the Plaintiff alleges that this was pretextual and that she was actually fired because of her race and her actions in response to the racist text message sent from Garcia's phone [25, at ¶¶ 7–8]. Despite the need for bundlers, as stated by Garcia [86-4, p. 32, 3–10], the Plaintiff was not offered her old job back as a bundler. Garcia stated that this was because the sewer probationary period agreement stipulated that if the Plaintiff failed as a sewer, she "would not be employed at Seminole Furniture any longer" [86-4, p. 34, lns. 16–21]. Garcia stated that this was "Lynn Montgomery's doing" [*Id.*]. However, when shown a copy of the agreement, Garcia conceded that it did not contain any such stipulation [Id., at p. 35, lns. 2–20; 86-7].

On the same day that she was terminated, the Plaintiff showed the text message to Stroupe [87, at 7; 86-1, at p. 100, lns. 8–25]. Stroupe has stated that he investigated the incident by gathering information about it and speaking with, among others, Garcia on two or three occasions; human resources manager Kalista Allen; the Plaintiff's mother; plant manager Lynn Montgomery; office worker Pam Brekke; and Mary Morgan, a co-worker of the Plaintiff [86-3, p. 34, lns. 11–16; 83, at 3]. He concluded that Garcia had not sent the message [86-3, p. 34, lns. 11–16]. As to the termination of the Plaintiff and the subsequent decision not to rehire her as a bundler, Mr. Stroupe stated that he left the matter up to Garcia, as the overseeing supervisor [Id., p. 32, ln. 20 to p. 33, ln. 21].

On March 29, 2018, the Plaintiff signed a Charge of Discrimination, which was received by the Equal Employment Opportunity Commission ("EEOC") on April 2, 2018 [25-2]. The EEOC issued a Notice of Right to Sue to the Plaintiff on November 26, 2018 [25-3]. On

February 15, 2019, the Plaintiff filed her initial Complaint [1]. On September 30, 2019, she filed her First Amended Complaint [25]. On August 27, 2020, the Clerk of the Court entered a Default against Seminole [80]. On September 14, 2020, Stroupe filed his Motion for Summary Judgment [82]. The Plaintff filed her Response on October 12, 2020 [86]. Stroupe filed his Reply on October 19, 2020 [88]. The matter is now ready for review.

## II. Legal Standards

### A. Summary Judgment

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). This rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The party moving for summary judgment bears the burden of identifying its basis for the motion, and must point to specific parts of the record that support its contention of an absence of a genuine dispute of material fact. *Id.* at 323.

After the moving party does so, the burden shifts to the non-moving party, which must "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When there is a dispute about the facts, the Court must view the facts in the light most favorable to the non-moving party and likewise

4

must draw reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F.App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

Any claim that is not raised in a response to a defendant's motion for summary judgment is deemed to be waived. *Aldrup v. Caldera*, 274 F.3d 282, 288 (5th Cir. 2001). Moreover, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas*, 136 F.3d at 458. That said, summary judgment "must be used cautiously or it may lead to drastic and lethal results." *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980). This is particularly true regarding cases of alleged employment discrimination. *See Thornbrough v. Columbus and Greenville Railroad Co.*, 760 F.2d 633, 640–41 (5th Cir. 1985).

### B. Racial Discrimination in Employment Decisions

"To establish a prima facie case of racial discrimination in employment, an employee must demonstrate that she '(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.'" *Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314,

5

319–20 (5th Cir. 2014)). After the plaintiff meets this initial burden, the burden shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for their action against the plaintiff. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). However, "the inquiry does not end here." *Id.* at 804. The burden then shifts to the plaintiff, who must demonstrate that the defendant's stated reason was merely a pretext for discriminatory action. *Id.* In the absence of such a demonstration, the plaintiff's case must fail. *Id.* at 807. This same principle is true in cases of alleged failure to promote and wrongful termination based on discrimination. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–54. "The burden of establishing a *prima facie* case of disparate treatment is not onerous… the *prima facie* case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Id.* at 253–54 (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978)). After this stage, as indicated above, the burden shifts to the defendant, who must "rebut the presumption of discrimination by producing evidence" of a legitimate, non-discriminatory reason for their actions." *Id.* at 254. This is accomplished by raising a genuine issue of material fact regarding the plaintiff's case of alleged discrimination, and the defendant need not persuade the court of its motives at this juncture. *Id.* at 255. If the defendant does so, the plaintiff's *prima facie* presumption is rebutted, "and the factual inquiry proceeds to a new level of specificity." *Id.* At this stage, the plaintiff must demonstrate that the defendant's offered reason was not "the true reason" for their employment decision; this burden merges with the plaintiff's "ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* at 256. Specifically, the plaintiff can succeed at this stage "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the

employer's proffered explanation is unworthy of credence." *Id.* (citing *McDonnell Douglas*, 411 U.S., at 804–805).

### C. Malicious Interference With Employment

As the Defendant correctly points out, Mississippi does not recognize a "malicious interference with employment" cause of action. *Crabb v. Itawamba County, Mississippi*, 2005 WL 2648017, *4 (N.D. Miss. 2005). Instead, courts treat this issue as they would a claim for tortious interference with a contract. *Id.* In cases of tortious interference with a contract, the plaintiff must prove that there was a malicious interference with a valid and enforceable contract, and that the actions underlying this interference also satisfy the elements needed to prove tortious interference with business relations. *Levens v. Campbell*, 733 So.2d 753, 759–61 (Miss. 1999). These elements include proving that: "(1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual loss and damage resulted." *PDN, Inc. v. Loring*, 843 So.2d 685, 688 (Miss.2003).

### III.    Analysis and Application

The Plaintiff has not presented any evidence indicating that Stroupe was involved in the decision to terminate her. In fact, she has stated that she only told Stroupe after her termination [86-1, at p. 100, lns. 8–25]. Thus, the Plaintiff presents an *ex post facto* approach of liability, arguing that Stroupe can be held liable for Garcia's alleged acts of racial discrimination because "he ratified her discrimination by not doing anything about the racist text and not overturning the termination" [87, at 14]. To be clear, the Plaintiff was terminated by another party, i.e. Garcia. The Plaintiff now alleges that because Stroupe sided with Garcia instead of her, this should

7

equate to racism by proxy, rather than the work of a manager who, after investigating the matter, trusted the termination decision of his subordinate. Yet, the Plaintiff fails to present even a single case to support either this "ratification" theory of liability or the proposition that Stroupe's actions in this case amounted to an adverse employment decision undertaken by him against her. Similarly, the Plaintiff fails to present evidence demonstrating that Stroupe treated her less favorably than an employee outside of her protected class. The Plaintiff also fails to establish that Stroupe also served as her employer in his personal capacity, in addition to Seminole. Even presuming that this flimsy case satisfies the first step of the *McDonnel Douglas* framework, the Plaintiff fails to meet her burden under the third step of the framework because she fails to demonstrate with specificity that a discriminatory motive prompted Stroupe's actions or that his stated reasons for taking these actions were not in fact his true reasons.

The Plaintiff makes the same "ratification" argument with regard to her second cause of action: "malicious interference with employment," which the Court takes to mean a claim of tortious interference with a contract. Yet again, the Plaintiff fails to provide any support for this notion. The Plaintiff fails to articulate any meaningful argument that Stroupe's actions satisfy the elements necessary for this cause of actions. Specifically, the Plaintiff fails to present any evidence showing that Stroupe's actions were "calculated to cause damage" to the Plaintiff or that these actions were done with an "unlawful purpose of causing damage and loss without right or justifiable cause." *Loring*, 843 So.2d at 688. As with her first claim, the Plaintiff merely presents baseless allegations with regard to Stroupe and relies on nothing more than a conclusory statement imputing without evidence Garcia's allegedly discriminatory motivations onto Stroupe. Consequently, her claims in this matter fall far short of the goal.

## IV. Conclusion

Defendant Stroupe has sufficiently supported his contention that there is no genuine issue of material fact in this case and that he is entitled to judgment as a matter of law. Thus, the burden shifts to the Plaintiff, who has failed to show that there is a genuine issue of material fact. As a result, the Court finds that summary judgment is warranted with regard to Defendant Stroupe. For reference, the Clerk of the Court has entered a Default against Defendant Seminole [80], and the case remains active with regard to Defendant Alan White. For the reasons stated above, Defendant Stroupe's Motion for Summary Judgment [82] is GRANTED.

An order in accordance with this opinion shall issue this day.

THIS, the 9th of March, 2021.

_____
SENIOR U.S. DISTRICT JUDGE